## Case No. 4,376.

The ELLEN HOLGATE v. The ILLINOIS.

[35 Leg. Int. 194; [1] 13 Phila. 470; 6 Reporter, 40; 6 Wkly. Notes Cas. 353; 24 Int. Rev. Rec. 159; 25 Pittsb. Leg. J. 157.]

Circuit Court, E. D. Pennsylvania. April 10, 1878.[2]

Morton P. Henry and Henry R. Edmunds, for respondents and appellants.

J. Warren Coulston, for libellant and appellee.

[1] [Reprinted from 35 Leg. Int. 194, by permission.]

[2] [Affirmed in 103 U. S. 298.]

McKENNAN, Circuit Judge. It is the duty of a vessel overtaking another to keep clear of the vessel ahead; and this duty is especial-

ly imperative upon a steamer, which has the control of her own motive power, and can therefore more promptly and accurately govern her own movements. Hence she must carefully observe the course and conditions of the vessel in advance of her, and, in view of these adapt her own rate of speed and line of movement to the avoidance of danger of collision with such vessel; and if a collision occurs she is regarded as prima facie in fault, unless it appears to have been inevitable. But the preceding vessel is not without correlative obligations. She is bound to maintain a proper lookout, to keep her course, and not to change it, at a time and under circumstances which would involve danger of collision with a vessel approaching from either direction, except under the pressure of an imminent greater peril.

Now, it is apparent that if both vessels had kept their course, the collision complained of could not have occurred. The steamer would then have given the schooner so wide a berth in passing her as to involve no risk of collision. The steamer did not violate her duty to keep out of the schooner's way, in adopting and pursuing a line of movement which was, in the first instance, attended with no danger to either of them, but was only rendered unsafe by a change of the schooner's course. She had a right to assume that the schooner would keep her course, or, at least, would not attempt to change it when the vessels were in such close proximity to each other as to create a peril which could not otherwise exist. As was said by Mr. Justice Strong, in The Scotia, 14 Wall. [81 U. S.] 181: "Nor is a steamer called to act, except when she is approaching a vessel in such direction as to involve risk of collision. She is required to take no precautions when there is no apparent danger." While, therefore, the steamer selected a line of movement, which seemed to be, and really was, safe for both vessels, she might rightfully follow it, and was not called upon to act further in the way of precaution, "until danger of collision should have been apprehended." And when this danger became imminent—not by any act of hers—such precautions were promptly taken by her as seem to have been adapted to the emergency. In the moment of peril she did all that could be done to avert it, or to mitigate its consequences. Under such circumstances no fault is imputable to her, unless the schooner had an absolute right to change her course, as she did, and the steamer was bound to anticipate it.

However rigidly a steamer is, and ought to be, held to the duty of keeping out of the way of a sailing vessel which she is approaching, it is only justly enforcible by regarding the conduct of both vessels, in its contributory connection, with the emergency in which the steamer is suddenly called upon to act. The ultimate test of the steamer's liability is, whether, under subsisting conditions, she did any thing which she ought

not to have done, or omitted any precaution which she ought to have taken. Accordingly it was determined in The Scotia, supra, that where a steamer and a sailing vessel were approaching each other, and the steamer took a course which would carry her at a safe distance, in passing, from that apparently pursued by the other, and the latter changed her direction and a collision resulted, the steamer was not responsible, when she had not "failed to adopt such precautions as were in her power, and were necessary to avoid a collision," as soon as that peril arose. Why should a different rule of accountability be applied, when the only difference in the circumstances consists in this, that both vessels were proceeding in the same direction, and the steamer sought to go ahead of the sailing vessel? A steamer may rightfully avail herself of the superior speed which she derives from her special motive power; and, if she keeps a proper lookout, and, in view of the apparent course of the vessel ahead of her, takes a direction unattended with risk of collision, does she not, in this regard, observe all the precaution which the law exacts from her? But it was argued, that the tacking of the schooner was rendered necessary by the ice, and that this necessity ought to have been perceived by the steamer and her movements have been determined accordingly.

It is fully proved, that there was a sufficient lookout on the steamer, that the master and pilot were on the bridge looking ahead, that the movements of the schooner were carefully noted, and that no immediate necessity for a change of the schooner's course was discerned by those in charge of the steamer. It is difficult to determine how near the schooner was to the field of ice when she tacked. None of the witnesses, who were on board of her, state the distance. That a change in her course was necessary to avoid it is undoubted, but whether she was in such close proximity to it as to make such change imperative at the time when it was made, does not satisfactorily appear from the libellant's proofs. It did not seem so to those on board the steamer, for, as her master testified "the water was clear for a mile ahead, and a quarter to a half mile to leeward;" and the testimony of the other witnesses for the respondent is not inconsistent with this aspect of the situation. With a sufficient lookout, then, on the steamer, if no immediate necessity for the schooner's going about was observed by those engaged in this duty, as is fairly inferrible from the proofs, negligence is not predicable of the steamer's failure to anticipate the schooner's variation. We must therefore seek elsewhere for the fault which the collision involved. I think it resulted from the unquestionable negligence of the schooner.

It is evident that the steamer was not seen by the schooner until the latter had changed her course. The testimony of her captain is decisive on this point. He says: "I first

discovered the steamer after our vessel filled off and started ahead," and the steamer was then at a distance of, "I should think between two and three hundred yards somewhere." This ignorance of the proximity of the steamer was doubtless the result of a failure of observation. Although, while the schooner kept her course, this omission was excusable, because it would have been harmless, yet it is undeniable that, when she was about to change her course, she was bound to look out astern, so as to avoid peril to herself or others, if the surrounding circumstances might induce an apprehension of it. Can it be doubted that she would not have executed such a movement, if she had observed the steamer when she resolved upon it? It would have been apparent to her, as it was to all others who were in the vicinity at the time, that to tack then was either recklessly to invite a collision, or to increase the immediate danger of it. By executing it a few minutes before she did, she could have crossed the course of the steamer with entire safety, or by holding her luff for a minute or two longer the steamer could have passed her without risk of injury to either. Pretermitting, however, the precaution she was bound to observe, she put herself in the way of the steamer, at a time when the latter could not avoid her, and thus rendered the collision inevitable. She, therefore, is alone responsible, and so all the libels must be dismissed with costs.